UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

GILBERT GALAN, JR.,                        §
                                           §
      Plaintiff,                           §
VS.                                        §    CIVIL ACTION NO. 2:17-CV-256
                                           §
VALERO SERVICES, INC., *et al*,            §
                                           §
      Defendants.                          §

**ORDER SUBMITTING THE MOTION TO COMPEL ARBITRATION
TO A JURY TRIAL ON THE FACT QUESTION OF
THE EXISTENCE OF AN ARBITRATION AGREEMENT**

Plaintiff Gilbert Galan, Jr. (Galan) sued his employers, Valero Services, Inc. and Valero Energy Corporation[1] (jointly Valero), for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). He alleges that Valero did not pay him for all hours worked and did not pay required overtime premiums. Galan has filed a motion for leave to amend his complaint to transform this individual action into a collective action. D.E. 10. He has further filed a motion for class certification and expedited discovery in connection with the class certification request. D.E. 28.

Also pending before the Court is Valero's "Motion to Compel Arbitration of Plaintiff's Claims and to Dismiss Litigation" (D.E. 11). Valero asserts that Galan agreed to arbitrate any cause of action related to his employment, including FLSA claims. The Fifth Circuit has held that the Court must address arbitration issues prior to any request regarding collective action certification. *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373,

---

[1] Galan was never employed by Valero Energy Corporation, which is a holding company without employees. D.E. 11-1, p. 3. Valero has not sought dismissal of the claims against this holding company and resolution of that matter is not necessary for disposition of this motion.

376 (5th Cir. 2016). For the reasons set out below, the Court FINDS that the parties have raised a disputed issue of material fact as to whether an arbitration agreement exists between them and ORDERS this fact question to be submitted for jury trial.

## DISCUSSION

### A. Facts

Valero hired Galan on March 15, 1994. At that time, Valero did not have any arbitration agreement with its employees. However, Valero purchased Ultramar Diamond Shamrock, Inc. (UDS) in January 2002, and in the merger integration, adopted UDS's arbitration model. The result was called "*Dialogue* – the Valero Dispute Resolution Program" (*Dialogue*), effective June 1, 2002. D.E. 11-1, p. 10. *Dialogue* is a multi-step set of options for handling work-related conflicts, including open communication, internal conferences, mediation, and arbitration. D.E. 11-1. Mandatory arbitration is the last step in the dispute resolution plan.

According to the Affidavit of Kim Griffin, Director Refinery HR, she implemented the dispute resolution program when she was Valero's Dialogue Manager between January 2002 and January 2004.[2] D.E. 11-1, p. 2. It is undisputed that Valero did not get a signed arbitration agreement from Galan. Rather, Valero asserts that its employees were given notice of *Dialogue* by five other measures: a mailed brochure and letter; information on the Valero intranet portal; meetings; posters; and its Employee Guide. Valero claims that by continuing to work for Valero after those measures were put in place, the employees consented to the arbitration provisions of *Dialogue*.

---

[2] UDS had implemented Dialogue on December 1, 1994.

## 1. Mailed Brochure and Letter

Valero claims to have mailed copies of a *Dialogue* brochure to the current address of each employee, including Galan (D.E. 11-2, p. 14), containing a letter from Bill Greehey, Chairman and Chief Executive Officer.[3]  While Griffin attests that she supervised the mailing, including the generation of appropriate employee addresses, she does not affirmatively state that the envelopes contained pre-paid postage.[4]  However, she does state that the item addressed to Galan had Valero's return address on it and it was not returned by the Post Office as undeliverable.  *Id.*  The letter, published on the third page of the brochure, states:

> This program will go into effect on June 1, 2002 for all non-union employees.[5]  ***It is required as a condition of employment*** and will eliminate the lengthy and difficult process of having disputes escalate to the point where a judge and jury are needed to resolve claims.  With Dialogue, disputes are resolved by a neutral professional arbitrator.  Dialogue Advisors in our Corporate Human Resources Department will also be available to assist you as neutral facilitators of this process.
>
> This brochure contains both a summary of the program and a more detailed statement of its terms and conditions.  ***Please carefully review these materials and all of the terms that you will be required to follow***.

---

[3]  The only *Dialogue*-related letter in the evidence appears to be embedded in the brochure, rather than being a separate letter.

[4]  Most iterations of the presumption of receipt require proof that the document was properly addressed, with postage prepaid.  However, not all recitations are that specific, requiring only evidence that the item was mailed or properly addressed.  *See e.g., Warfield v. Byron,* 436 F.3d 551, 556 (5th Cir. 2006) (citing *Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 996 (5th Cir.1989)); *In re Certain Underwriters at Lloyd's London,* 294 S.W.3d 891, 907 (Tex. App.—Beaumont 2009, orig. proceeding) (citing *Wembley Inv. Co. v. Herrera,* 11 S.W.3d 924, 927 (Tex.1999)).

[5]  The record is silent on whether Galan is a non-union employee.  Under the standard of review, discussed below, the burden is on Galan to show that the arbitration agreement does not apply.  Thus the Court assumes that Galan is a non-union employee.

D.E. 11-1, p. 10 (emphasis added). The following page of the *Dialogue* brochure

contains this notice:

> **ATTENTION ALL EMPLOYEES**
>
> ***If an employee accepts or continues employment with Valero, both the employee and Valero agree to all provisions of Dialogue, the Valero Dispute Resolution Program*** *(also referred to as Dialogue or the Program). This includes the requirement that any legal dispute not resolved through other Options, as discussed in this summary, be submitted to **final and binding arbitration** rather than through the courts or to a jury. This agreement covers any dispute with the Company or its employees, such as personal injury claims or claims of discrimination based on race, national origin, gender, religion, age or disability or claims under any federal or state statute, as well as claims under any Valero benefit plan and the Work Injury Program.*
>
> *This Program applies to any workplace dispute, regardless of when it arises, including disputes that arise or are asserted after an employee leaves the Company.*

D.E. 11-1, p. 11 (emphasis added). A similar notice has accompanied each update of

*Dialogue* through the date of Galan's termination. D.E. 11-4, p. 25.

Galan does not recall ever being told that his continued employment constituted

consent to arbitration. D.E. 18-1. Furthermore, if he were ever threatened with

termination for refusal to consent to arbitration, he would remember it, as that would be

the only reason he would agree to it. *Id*. Galan attests that he never received a copy of

the *Dialogue* brochure or its CEO letter in the mail. *Id*. Yet he does not deny that the

address Valero used for him was his correct mailing address at the time of the 2002

implementation mailout. *Id*. He further admits to having received other mail from

Valero. *Id*.

## 2. Human Resources and Intranet Portal Links

In addition to the mailout, Griffin testified that current versions of the *Dialogue* plan are maintained in hard copy in its human resources offices and in a digital version on Valero's intranet portal.

> The Dialogue Plan has undergone various non-substantive revisions since 2002, particularly updating the introductory letter. Attached to this Affidavit as Exhibit A-5 is a true and correct copy of the most recent version of the Dialogue Plan, which was effective at the time Plaintiff's employment ended. Employees were notified of that revised Dialogue Plan through Valero's intranet portal. Valero has used that intranet portal to communicate with employees about human resources manuals, policies, forms, paystub information, etc. since mid-1999. Employees have daily access to the portal, are notified when new information becomes available, and are expected to review the policies and procedures posted on the company's intranet. Employees are expected and were expected, throughout the time of Plaintiff's employment, to be aware of updated and revised policies and procedures on the company's intranet, per the Employee Guide.

D.E. 11-1, p. 4. This explanation and the exhibits accompanying the motion to compel arbitration do not detail any form of notification of *Dialogue* and its arbitration agreement through the human resources offices or the intranet portal other than a general expectation that employees remain aware of evolving company policies as instructed in the Employee Guide.

According to Manuel Hofilena, Valero's Senior Manager Software Development Engineer, information regarding *Dialogue* was posted on Valero's intranet portal for human resources materials on May 17, 2010. D.E. 20-1. Hofilena describes where the

links for information are and that the portal contains an overview and a copy of the brochure.

The link appears innocuously among a number of other "Quick Links," with no special emphasis. In contrast, the link for the Substance Abuse Program appears in red font and the Employee Assistance Program appears in black font, whereas the other 24 links on that side of the web page are all blue. The *Dialogue* link is 10th in a list of 16 close-set topics. It does not appear in the more spacious list of HR News and Resources, which includes the request, "Please check regularly for news and updates." D.E. 20-1, p. 6.

Nothing in Hofilena's affidavit describes how employees were notified of the importance of reviewing the *Dialogue* information or that they were specifically directed to access *Dialogue* information on the portal. Neither does Hofilena offer evidence that Galan actually accessed the *Dialogue* links he describes.

Galan admits to using the portal for other purposes, including rules related to sick leave, employee benefits, and how much his paycheck would be. D.E. 18-1. In other words, he knew how to find information that he needed. However, he attests that he did not know what *Dialogue* was and had no reason to investigate it. *Id*. He neither knew that he needed it nor that Valero required it.

### 3. Meetings

Griffin testified that she directed informational meetings on or about April 17, 2002, for all employees. D.E. 11-1. Those meetings were designed to explain the *Dialogue* plan. *Id*. Griffin does not state how employees were notified of the scheduling

or content of the meetings or any requirement that they attend. While all employees, including Galan, were required to attend, Griffin does not attest that Galan did attend and she does not supply any sign-in sheet or other proof to that effect. *Id*. Galan denies having any knowledge of such a meeting and attests that he did not attend one. Rather, the only Valero meetings he attended were safety or refinery education meetings, neither of which addressed *Dialogue* or arbitration. D.E. 18-1.

### 4. Posters

According to Griffin, Valero placed posters regarding *Dialogue* at seven work locations throughout the refinery where Galan worked and elsewhere. D.E. 11-1, 11-2, p. 17. The photographic example of such a poster shows it to be crowded by a collage of partially overlapping posters and notices. D.E. 20-2. It bears the title "Dialogue" and subtitle "The Valero Dispute Resolution Program." However, its only reference to arbitration appears in the last of five bullet points under the smaller heading "What is Dialogue?" D.E. 20-1.

First, the poster touts *Dialogue* as building on an open communications policy, encouraging teamwork, providing fair treatment in an established dispute resolution method, and promoting flexible options for resolving disputes "depending upon whether they are non-legal or legal issues." Then it states, "It provides a confidential, binding arbitration hearing with the same legal remedies in a less intimidating setting than a long court battle in state or federal court." *Id*. It does not state anything with respect to conditioning continued employment on acceptance of its terms.

Galan testifies that he did not frequent any of the areas in which the posters were placed. D.E. 18-1. While he did visit a few of those locations on rare occasions, and did view a minimum wage and internal job posting poster that Valero asserts was in the vicinity of a *Dialogue* poster, he did not specifically notice any *Dialogue* posters and would not have understood them to reference arbitration if he had. *Id*.

### 5. Employee Guide and Acknowledgment

Valero modified its Employee Guide, available on the Valero intranet portal and in hard copy at Human Resources offices, to reference *Dialogue*. D.E. 11-2, p. 29. That reference, in its entirety, states:

> DIALOGUE DISPUTE RESOLUTION PROGRAM
>
> > The Company has adopted a Dispute Resolution Program called Dialogue. For more information regarding this program, visit "My HR" on Valero's Intranet or contact the Dispute Resolution Manager at (XXX)XXX-XXX or 1-800-XXX-XXXX, ext. XXXX or XXXX.
> >
> > - Does not apply to employees covered by a collective bargaining agreement.

*Id*. (phone numbers redacted).

Employees, including Galan, signed an Acknowledgment form (D.E. 11-3, p. 21) to evidence receipt of the Employee Guide. That Acknowledgment requires the employee to recite reviewing and understanding a number of important provisions of the Employee Guide, particularly:

> - Policies may be modified at any time and nothing alters the at-will nature of the employment relationship;

- Valero may offset amounts the employee owes from his paychecks;

- The employee will abide by the harassment policy;

- The employee will abide by the conflict of interest policy;

- The employee will abide by the electronic communications policy, understands that access to technology resources is a privilege and that he has no expectation of privacy in that use;

- The employee will abide by the Personal Searches, Substance Abuse Prevention, and Weapons policies and consents to searches; and

- The employee will comply with all safety rules and use all prescribed safety devices.

*Id*.  There are no statements related to the review and acceptance of any dispute resolution policy or arbitration agreement contained in the Acknowledgment.  *Id*.

Galan testifies that he did receive the Employee Guide on or about May 2, 2002. D.E. 18-1.  He points out that neither the Employee Guide nor the CEO letter that accompanied it (D.E. 18-2, p. 2) addressed arbitration.  While the letter put Galan on notice that revisions and additions to the Employee Guide would be posted in the online version, and while Galan made use of the Valero intranet portal from time to time, he did not notice or understand anything to reference arbitration, including any mention of *Dialogue*.  D.E. 18-1.

Galan continued to work for Valero until his termination on January 26, 2017. D.E. 1.  He states that he would not have agreed to arbitration unless his employment

with Valero depended upon it.  D.E. 18-1.  According to Valero, Galan's employment did depend upon it.

**B. Arbitration Rubric**

A motion to compel arbitration requires the Court to consider two questions:  (1) whether there is a valid agreement to arbitrate between the parties according to state contract law; and (2) whether the claim falls within the scope of the arbitration agreement.  *E.g. Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).  It is undisputed that the claims of this case fall within the scope of Valero's arbitration policy.  Thus the only issue presented is whether that policy constituted an arbitration agreement under the facts of this case.

Whether an arbitration agreement was formed between the parties is a question within the state law of contracts.  *See generally*, *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).  According to the Supreme Court of Texas, "Although we have repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists."  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

This limitation on the policy interest favoring arbitration is also recognized by the Fifth Circuit.  "In determining whether the dispute falls within the scope of the arbitration agreement, 'ambiguities ... [are] resolved in favor of arbitration.'  However, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead '[o]rdinary contract principles

determine who is bound.'" *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069,

1073 (5th Cir.), *supp. on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002). *See also, TRC*

*Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 F. App'x 759, 762 (5th Cir. 2015).

The Texas Supreme Court has set out the manner in which an at-will employment

relationship may be modified without a signed agreement under Texas law:

> In employment at will situations, either party may impose modifications to the employment terms as a condition of continued employment. The party asserting the modification still must prove that the other party agreed to modify the employment terms. Generally, when the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law. Thus, to prove a modification of an at will employment contract, the party asserting the modification must prove two things: (1) notice of the change; and, (2) acceptance of the change.

> To prove notice, ***an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms. Cases dealing with employment modifications require that the employee have knowledge of the proposed modification.*** Fairness also dictates this rule. To have knowledge of a modification, the employee must know the nature of the changes and the certainty of their imposition.

> The employer asserting a modification must also prove that the employee accepted the proposed changes. If the employer proves that he has unequivocally notified the employee of the changes, the employee's continuing employment will constitute acceptance as a matter of law.

*Hathaway v. Gen. Mills, Inc*., 711 S.W.2d 227, 229 (Tex. 1986) (citations omitted;

emphasis added).

The *Hathaway* rubric addresses the state law issue of contract formation. It applies equally to the imposition of arbitration and non-arbitration terms of employment. *See generally, Hathaway*, 711 S.W.2d at 229 (addressing a salesman's commissions); *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (applying *Hathaway's* rubric to the imposition of an arbitration agreement). Thus it does not run afoul of the Federal Arbitration Act's (FAA's)[6] prohibition of any state rule that directly or indirectly discriminates against arbitration. *E.g., Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). *See also*, FAA, 9 U.S.C. § 2.

The Court thus determines whether Valero has demonstrated that it gave Galan unequivocal notice that compliance with *Dialogue* (containing its mandatory arbitration provision) was required as a condition of continued employment. As the party seeking to show a modification of the terms of the at-will employment relationship, the burden of proof is on Valero. *Hathaway*, 711 S.W.2d at 229; *Burlington N. R. Co. v. Akpan*, 943 S.W.2d 48, 50 (Tex. App.—Fort Worth 1996, no pet.) (placing the burden of proof on employer to demonstrate the modification of at-will employment to include arbitration agreement).

**C. Whether Valero Gave Galan Unequivocal Notice.**

The evidence that Valero has offered with respect to the informational meetings it held and the posters it placed at the worksite is insufficient to demonstrate that it gave Galan unequivocal notice of the change in the terms of his at-will employment. Valero

---

[6] There is no question that Valero's employment of Galan was in connection with interstate commerce and that the FAA applies.

offered no details regarding what the meeting notice contained or whether Galan actually attended such a meeting. Likewise, the content of the posters does not reflect the imposition of an arbitration agreement as anything more than one of a number of options available for dispute resolution. Valero does not demonstrate that any poster—even if read by Galan—set out that *Dialogue* is a modification of the terms of employment and that continued employment constitutes acceptance.

The Employee Guide and Acknowledgment are problematic because they contain a disclaimer that runs counter to the requirement of a definite change in the employment relationship and the concept that continued employment is conditioned on any provision contained therein. As the *Hathaway* court stated, "To have knowledge of a modification, the employee must know the nature of the changes and the certainty of their imposition." 711 S.W.2d at 229. *See generally*, *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) ("A disclaimer in an employee handbook . . . negates any implication that a personnel procedures manual places a restriction on the employment at will relationship."); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386 (Tex. App.— Houston [14th Dist.] 1998, pet. dism'd w.o.j.) (arbitration provision was not supported by consideration when disclaimer allowed employer to alter policies unilaterally).

Valero's Employee Guide disclaims the definitive nature of any of the policies stated therein. It is further silent on the issue of acceptance by continued employment of any change to policies adopted after the worker was hired. The Introduction states:

> Welcome to Valero! Valero Energy Corporation, its
> subsidiaries and affiliates (Valero) provides this Employee
> Guide to employees to inform employees about some of the

policies in effect at the time of publication. Employees are encouraged to read the Employee Guide thoroughly and retain it for future use. This Employee Guide contains only a summary of the Company's policies. . . . ***The Company reserves the right unilaterally to amend, change, suspend, terminate, or interpret the policies and benefits summarized in this Employee Guide at any time for any reason***. Valero will notify employees of changes to this Employee Guide periodically. . . .

AT-WILL EMPLOYMENT; GUIDE IS NOT A CONTRACT

The information contained in this Employee Guide is intended as a guide and ***does not constitute an employment agreement or contract***. . . .

D.E. 18-2, pp. 5-6 (emphasis added). The Acknowledgment that Galan signed, and upon which Valero relies, begins with the recitation,

I have received my copy of the Valero Employee Guide, which outlines my privileges and obligations as an employee. I understand that ***nothing stated in this Guide constitutes a contract of employment or a guarantee of any employee benefit***.

Because the information in this booklet is necessarily ***subject to change by administrative action*** of the Company, it is understood that policies set forth ***may be modified, superseded, or eliminated at any time***.

D.E. 18-3 (emphasis added). These disclaimers, together with the fact that the Employee Guide fails to address arbitration at all and its reference to *Dialogue* is cryptic, renders it insufficient to modify Galan's terms of employment.

This leaves the mailing of the brochure and letter as the only means by which Valero may be held to have provided knowledge of the nature of the changes and the certainty of their imposition. Galan does not argue that these items are insufficient on

their face.[7]  The brochure sets out each step or option in the dispute resolution process, culminating in binding arbitration.  It is further prefaced with a warning that it contains a requirement of final and binding arbitration.  The letter contained within the brochure, as well as the prefatory warning make it clear that continued employment constitutes acceptance of this change in the terms of employment.

Galan defends against the use of this mailing to bind him to the arbitration policy by arguing that he did not actually receive it in the mail.  Valero relies upon the presumption that documents mailed are received.  "It is settled in this state . . . that when a letter properly addressed and with postage prepaid is mailed, a presumption of fact (rebuttable of course) arises that it was duly received by the addressee."  *Southland Life Ins. Co. v. Greenwade*, 138 Tex. 450, 455, 159 S.W.2d 854, 857 (Comm'n App. 1942, op. adopted) (parenthetical in original).  The presumption is not dispositive in the face of the addressee's denial of receipt.  *Sudduth v. Commonwealth Cty. Mut. Ins. Co.*, 454 S.W.2d 196, 198 (Tex. 1970).  In such an event, receipt becomes a question of fact beyond a court's purview to decide.  *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 359 (Tex. 1971) (question of fact for the jury).

Valero contends that Galan's denial of receipt is insufficient to rebut the presumption of receipt that arises upon proof of mailing.  Its argument highlights a difference between evidence that fully overcomes the presumption and evidence that

---

[7]  To some extent, Galan does claim that he is not a lawyer and could not decipher the import of any dispute resolution policy, however noticed.  But the knowledge required by *Hathaway* does not require a full understanding of the policy.  *Halliburton*, 80 S.W.3d at 568; *Omoruyi v. Grocers Supply Co.*, No. 14-09-00151-CV, 2010 WL 1992585, at *10 (Tex. App.—El Paso May 20, 2010, no pet.).

raises facts that compete with the presumption, requiring a weighing of the evidence by the trier of fact.  Case law has confused this issue in that the term "rebut" (whether or not the challenger has successfully overcome the presumption) has been used to refer to both stages of refuting the presumption:  the fact question and the definitive defeat of the presumption of receipt.

In its motion, Valero cites *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 918 (N.D. Tex. 2000) as citing *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983).[8]  However, the *Wells Fargo* decision only stated the means of invoking the presumption of receipt.  It did not address the means for rebutting the presumption because there was no rebuttal evidence offered.

For the proposition that testimony denying receipt is insufficient to rebut the presumption, *Marsh* cites two Second Circuit cases and a section of American Jurisprudence.[9]  Both of the Second Circuit cases apply New York law and make no mention of Texas law.  *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993); *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985).  They are thus inapposite on this question of proving up an agreement under Texas law.

---

[8]   The *Marsh* opinion also cited *Myer v. Callahan*, 974 F. Supp. 578, 584 n.7 (E.D. Tex. 1997).  That footnote acknowledges that the presumption of receipt that comes from evidence of mailing is rebuttable.  It cites *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 596 (8th Cir.1995), which in turn cited *Sudduth, supra*, but noted that the recipient in that case did not meet the *Sudduth* threshold of denying receipt.  Rather, the alleged recipient only testified that the material mailed was not in its file and no one recalled receiving it.  That did not amount to substantial evidence of a denial of receipt.

[9]   *Marsh* cites 58 Am. Jur. 2d Notice § 47 (1989).  No such section exists.  Rather, the matter is addressed in § 40 "Presumption of receipt" discussed below.

The American Jurisprudence treatment of the issue reads:

> The mere denial of receipt is **insufficient to rebut the presumption** that proper notice was given by mail; however, **denial of receipt does raise a question of fact**. In other words, merely denying receipt of a mailed notice does not rebut the presumption of receipt, but it may create an issue of fact to be determined by the jury. **The presumption of receipt of a notice by mail may be overcome by evidence that the notice was never in fact received**.
>
> In order for the presumption to arise that notice was received, office practice must be geared so as to ensure the likelihood that a notice is always properly addressed and mailed. It can be rebutted if a denial of receipt is accompanied by some proof that the regular office practice was not followed or that it was carelessly executed. In the context of a mass mailing, there may be circumstantial evidence rebutting proof of mailing without direct proof that the routine office procedure was either not followed or was carelessly carried out.

58 Am. Jur. 2d Notice § 40 (footnotes omitted). This recitation of the law illustrates the different types of evidence necessary to (a) invoke the presumption, (b) raise a fact issue regarding receipt, and (c) rebut the presumption so as to eliminate its effect as any evidence of receipt.

Galan's testimony tracks that in *Chester v. DirecTV*, L.L.C., 607 F. App'x 362, 364 (5th Cir. 2015) (per curiam), which was held sufficient to raise a fact issue but not enough to eliminate the competing evidence of receipt created by successful invocation of the presumption. A Texas court addressing a dispute over whether arbitration was required recognized that denial of receipt creates a fact issue. "Testimony that the notice was not received is enough to rebut this presumption, thus creating a fact issue to be resolved by the trial court." *In re Halliburton Co.*, No. 01-09-00150-CV, 2009 WL

1886659, at *3 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.).[10]  This Court cannot, as a matter of law, hold that the brochure and letter providing modified terms reached Galan such that Galan accepted those terms by continuing his employment.

Valero claims that all of its measures are sufficient to evidence notice, as was the case in *Jones v. Fujitsu Network Commc'ns, Inc.*, 81 F. Supp. 2d 688, 692 (N.D. Tex. 1999).  In *Jones*, the court found that mailing the notice, having meetings, and making the policy available online were, together, sufficient notice triggering acceptance by continued employment.  However, the *Jones* fact scenario has two important distinguishing factors.  First, there is no suggestion that the employee denied receiving the mailed notice.  Second, there is affirmative evidence that the employee attended an informational meeting.  There is no indication that, without those two measures, posting the policy on the web, alone, would be sufficient notice.

**D.  Trial of Fact Issue on Existence of Agreement**

After reviewing the evidence and arguments of the parties, the Court holds that Valero has not demonstrated, as a matter of law, the existence of Galan's agreement to arbitrate.  Galan continued to work for Valero after its implementation of *Dialogue*.  However, there is a disputed issue of material fact as to whether he had sufficient notice of *Dialogue* and its arbitration feature as required by *Hathaway* so as to make continued employment an acceptance of the newly imposed arbitration agreement.

---

[10]   Valero relies on this *Halliburton* opinion for the proposition that denial of receipt, alone, is insufficient to overcome the presumption of receipt.  This representation of *Halliburton* is accurate only if it is understood that the denial is sufficient to create a fact issue while not completely defeating the presumption.  The same is true of Valero's reliance on *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007).

Pursuant to 9 U.S.C. § 4, the parties are thus entitled to a trial on the issue.

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4. *See also, Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015) (per curiam). Galan has demanded a jury trial of this issue as required by this section. D.E. 18, p. 10, 12.

Valero disputes Galan's right to a jury trial on the existence of the arbitration agreement, citing *Brendel v. Meyrowitz*, No. 3:15-CV-1928-D, 2016 WL 302282, at *1 (N.D. Tex. Jan. 25, 2016), *reconsid. denied*, No. 3:15-CV-1928-D, 2016 WL 1721312 (N.D. Tex. Apr. 29, 2016), which in turn relies on *American Heritage Life Insurance Company v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002). Both *Brendel* and *American Heritage* addressed resistance to arbitration based on the defense that the agreements, although executed, were unconscionable.

More specifically, the *American Heritage* opinion observed that plaintiffs claimed that defendants did not explain the arbitration agreements to them or that they did not realize that they were waiving a trial by jury. However, they failed to identify any misrepresentation that would amount to fraud in the inducement. "Raising issues of the

Agreements' procedural or substantive unconscionability, as [plaintiffs] have in the instant case, is not the equivalent of questioning the "making" of an arbitration agreement." *Id*. at 710. Thus FAA section 4 did not afford them a jury trial.

In *Brendel*, the plaintiff's affidavit merely claimed that he signed the agreement under stress and did not fully review or understand it. This conclusory evidence did not negate the fact that the arbitration agreement had been executed. Thus there was no issue to be determined by a § 4 jury trial. The *Brendel* opinion, in footnotes, discredits the relevant portions of the unpublished opinion in *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015) upon which Galan relies.

*Chester* actually involved a question regarding whether the claimed arbitration agreement existed. The defendant asserted that the plaintiff had signed it but that it had been lost. The plaintiff testified not only that he had not signed any such agreement, but that he would only have done so under direct threat of termination. And if he had been threatened with termination, he would remember it. Thus, because he did not recall any such threat, he was that much more adamant that he never signed it. The Fifth Circuit, albeit in an unpublished opinion, held that all of this goes to the threshold issue of whether the agreement was ever formed and raises a fact issue to be tried under FAA § 4.

Similar to the fact scenario in *Chester*, Valero has not produced an arbitration agreement. It is relying on the rubric of *Hathaway* to demonstrate that it gave notice of the imposition of arbitration as a condition to employment to Galan and that he accepted that modification of his terms of employment by continuing to work for Valero. Valero

does not have direct proof of having given Galan that notice but rather relies on the presumption of mailing.

Valero asserts that Galan offered only one bald assertion of non-receipt. However, his affidavit recites,

> 3. Neither when I was hired, nor at any time during my employment, did I sign an arbitration agreement. I unequivocally dispute that I signed an arbitration agreement. I also unequivocally dispute that I was ever informed by anyone that Valero had an arbitration policy.

> 4. Had I been offered an arbitration agreement, I would have attempted to continue my employment without signing it and only would have signed it if my employer threatened to terminate me if it was not signed.

> 5. If I was threatened with termination if I did not sign an arbitration agreement—or threatened with termination if I did not agree that I would be bound to arbitration—I would remember that. Because I do not remember any such threat, I am absolutely certain I did not sign an arbitration agreement. I am also absolutely certain I was never informed of a mandatory arbitration policy—or of any arbitration policy, for that matter.

D.E. 18-1. He then explains why he did not receive notice by any of the methods of notice upon which Valero relies. This is much more than a single bald assertion of non-receipt. And it comports with the type of evidence found sufficient in *Chester*.

This is not a case where a plaintiff seeks to vitiate his agreement based on unsubstantiated claims of unconscionability. Rather, he seeks to demonstrate that the notice of the imposition of the arbitration agreement, prerequisite to his acceptance by continued work, was never accomplished. In other words, Galan offers his evidence that the arbitration agreement that Valero seeks to impose was never formed. Because his

testimony raises a disputed issue of material fact that competes with Valero's invocation of the presumption of receipt upon mailing, Galan is entitled to an FAA § 4 jury trial on the issue.

## CONCLUSION

For the reasons set out above, the Court refers the disputed issue—whether Valero unequivocally notified Galan of definite changes in employment terms such that Galan had knowledge of the proposed modification—to a jury trial. In the event that the jury finds that Valero provided the necessary notice, then Galan will have accepted the modified terms of his employment by his undisputed continued employment and the Court will refer this action to arbitration. In the event that the jury finds that Valero did not provide the necessary notice, then the motion to compel arbitration will be denied and this matter will proceed in this Court. The Court will issue a Scheduling Order setting the case for trial limited to this notice issue.

ORDERED this 17th day of January, 2018.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE